UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| DEBORAH A. DAVIS, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:07-cv-1183 |
| ) | |
| v. ) | Honorable Joseph G. Scoville |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **OPINION** |
| Defendant. ) | |
| _____) | |

This is a social security action brought under 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB). On January 20, 2004, plaintiff filed her application for DIB benefits, claiming an October 6, 1999 onset of disability. (A.R. 56-58). Plaintiff's disability insured status expired on June 30, 2005. Plaintiff's claim was denied on initial review. (A.R. 38-39). On October 18, 2006, plaintiff received a hearing before an administrative law judge (ALJ) at which she was represented by counsel. (A.R. 299-345). On December 15, 2006, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 12-22). On September 28, 2007, the Appeals Council denied review (A.R. 5-7), and the ALJ's decision became the Commissioner's final decision.

On November 26, 2007, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits. The parties have voluntarily consented under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure to have a United

States Magistrate Judge conduct all further proceedings in this case, including entry of final judgment. (docket # 9). Plaintiff's statement of errors is set forth verbatim below:

1. The Administrative Law Judge must state a reason based in the record for rejecting plaintiff's testimony where the medical evidence establishes an impairment which could reasonably be expected to cause severe pain.

2. The Administrative Law Judge engaged in pure speculation when he found that plaintiff's caring for her 2-year old granddaughter was both physically and emotionally demanding.

3. There is no factual basis to support the Administrative Law Judge's conclusion that Ms. Davis had a non-severe impairment emotionally.

4. The Administrative Law Judge improperly concluded that the claimant was not at all disabled from October 6, 1999 through June 30, 2005, the date last insured. Yet the claimant turned 50 years old on June 2, 2003 and, at least this time period should have been subjected to a different standard of review.

(Statement of Errors, Plf. Brief at 1, docket # 8). Upon review, the court finds that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. The Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).

The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured requirements of the Social Security Act from her alleged onset of disability of October 6, 1999, through June 30, 2005, but not

thereafter.  Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability.  The ALJ found at step two of the sequential analysis that plaintiff had severe impairments: degenerative disc disease and asthma.  (A.R. 14-15).  Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments.  The ALJ determined that plaintiff's subjective complaints were not fully credible:

> The claimant testified that she last worked as a quality control inspector and was injured at work in 1998.  She testified that she has back pain that radiates to her legs and feet.  She described stabbing, pinching pain and some numbness.  She has not had back surgery, but did receive injections at a pain clinic.  The claimant testified that she can stand for approximately 30 minutes before she must sit.  She also stated that she has carpal tunnel syndrome, but is not currently receiving any treatment.  She testified that she lives with her son's family and cares for her 2-year-old granddaughter while her son and daughter-in-law are at work.  The claimant prepares meals and changes diapers.  When her son returns from work, the claimant watches television.  The claimant rests in her room in the evening with a heating pad or ice for her back and takes Advil for pain relief.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> The objective medical evidence does not support the claimant's allegations of an inability to engage in any gainful employment.  The x-rays and MRIs indicate that the claimant has only mild degenerative disc disease of the lumbar spine. Dr. Hughes noted that after physical therapy treatment and a steroid injection that the claimant had only an occasional twinge in her back, but no other significant pain.  The doctor noted that she was alert, had a good gait, and had no weakness.  The doctor stated that she could return to work without restrictions at her request and discharged her from his care.  There is no evidence in the record that the claimant has been treated recently for her back pain.  The objective medical evidence does not show that the claimant would be unable to work at the residual functional capacity determined in this decision.

 (A.R. 20).

The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to lift a maximum of 20 pounds [occasionally] and lift 10 pounds frequently. The claimant may stand, walk, or sit for 6 hours of an 8-hour shift with the option to sit or stand at will. The claimant should never climb ladders, scaffolds, or ropes; and should only occasionally use ramps or stairs, balance, stoop, crouch, kneel, or crawl. She should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, and vibrations. The claimant should never use pneumatic, torque, or vibratory tools; and should never work with hazards including dangerous/unprotected machinery, or work at unprotected heights. She is limited to occasional pushing or pulling with either upper extremity. The claimant is restricted to simple unskilled work with a specific vocational preparation (SVP) rating of 1 or 2. She is restricted from jobs that involve concentration or detailed/precise tasks or multiple/simultaneous tasks.

(A.R. 20). Plaintiff was unable to perform her past relevant work. The ALJ found that plaintiff "was 46-years old, which is defined as a younger individual age 45-49, on the alleged onset of disability date (20 CFR 404.1563)." (A.R. 21). Plaintiff has a limited education and is able to communicate in English. (A.R. 21). The transferability of job skills was not material because plaintiff's past relevant work was unskilled. The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 18,000 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (A.R. 339-41). The ALJ held that this constituted a significant number of jobs. Using Rule 202.17 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 14-22).

### 1.

Plaintiff disagrees with the ALJ's credibility determination regarding the severity of her back pain. (Plf. Brief at 15-16, docket # 8; Reply Brief at 1-5, docket # 11). Further, she contends that the ALJ "engaged in pure speculation when he found that plaintiff's caring for her 2-

year old granddaughter was both physically and emotionally demanding." (Plf. Brief at 16-18; *see* Reply Brief at 2-3). Neither of these arguments provides a basis for disturbing the Commissioner's decision.

The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothin v. Commissioner*, No. 07-4355, 2008 WL 4772077, at * 5 (6th Cir. Oct. 31, 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The ALJ's summary of plaintiff's medical records need not be repeated, but it is incorporated herein by reference. (A.R. 15-19). Plaintiff does not dispute that the results of her x-

rays and MRI revealed only mild degenerative changes. She argues that the ALJ's opinion "did not mention" a September 1, 1998 Electromyography (EMG) report (A.R. 155) and that the ALJ "ignored" a February 16, 2000 lumbar diskography (A.R. 172-73) "which evidenced the presence of annular tears in plaintiff's lumbar spine." (Plf. Brief at 15). These arguments are meritless.

"[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir. 2005); *see Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004); 2004); *accord Van Der Maas v. Commissioner*, 198 F. App'x 521, 526 (6th Cir. 2006). Plaintiff claimed an October 6, 1999 onset of disability. Her September 1, 1998 EMG[1] is dated more than a year before her alleged onset of disability. The EMG generally returned normal results. It showed "no electrophysiologic evidence of lumbosacral radiculopathy affecting the [plaintiff's] left lower extremity":

> HISTORY:   Low back pain and left leg numbness. Rule out lumbosacral radiculopathy.
>
> Motor nerve conductions of the right and left peroneal nerves revealed low amplitudes of the peroneal nerves bilaterally, with a prolonged distal latency of the left peroneal nerve. Segmental conduction velocities were within normal limits, but there was increased amplitude of the peroneal nerve with stimulation of the fibular head and knee, suggesting an accessory peroneal nerve may be causing inaccurate measurements of velocities.
>
> The left tibial CMAP was within normal limits.
>
> The left tibial F wave was within normal limits. The left sural sensory nerve action potential was within normal limits.

---

[1] Plaintiff testified that she had injured herself in 1998 when she "was carrying some parts at work and slipped over a tub and went down on the cement floor and smacked [her] back." (A.R. 312). In March of 2001, plaintiff settled her worker's compensation claim against her employer. (A.R. 315).

> The right and left H reflexes to the gastrocnemius-soleus were within normal limits bilaterally.
>
> Needle EMG of the left tibialis anterior, short head of the biceps femoris, medial head of the gastrocnemius, vastus lateralis, abductor hallucis, and high, middle and low lumbosacral paraspinals were all within normal limits.
>
> IMPRESSION:
>
> > 1.  There is electrophysiologic evidence of bilateral peroneal neuropathies, worse on the left than on the right.
> >
> > 2.  There is no electrophysiologic evidence of lumbosacral radiculopathy affecting the left lower extremity.

(A.R. 155). The ALJ's decision not to include a discussion of this EMG[2] predating plaintiff's alleged onset of disability by more than a year does not undermine his credibility determination.

Plaintiff's claim that the ALJ ignored the results of her February 16, 2000 lumbar diskography is patently untrue. This, and plaintiff's other test results from early 2000, are discussed at length on page four of the ALJ's opinion:

> The MRI was taken on January 6, 2000 and it showed multi-level mild degenerative disc disease; mild spinal stenosis at the L4-5 level; and an otherwise unremarkable exam with no nerve root compression. X-rays were also taken and they indicated lumbar spondylosis; and multi-level mild degenerative disc disease. The claimant returned to Dr. Hughes on January 24, 2000 with no change in her symptoms. Dr. Hughes reviewed the x-rays and the MRI results and noted the mild degenerative disc disease at the L3-4, L4-5, and L5-S1 levels. The doctor ordered a discogram which was conducted on February 16, 2000, as well as a computed tomography (CT). The CT scan showed a normal disc at the L2-3 level; an anterior annular tear at the L3-4 level, but no extravasation into the anterior epidural space; evidence of a central annular tear at the L4-5 level with extravasation into the anterior epidural space, and along the left L5 nerve root sleeve; and morphologic change compatible with a degenerative disc at the L5-S1 level, but no annular tears (Exhibit 5F).

---

[2]Similarly, the ALJ found it unnecessary to discuss plaintiff's June 25, 1998 EMG which returned normal results showing "no electrophysiologic evidence of cervical radiculopathy affecting the C-5 to T-1 nerve roots on either side." (A.R. 160).

> Dr. Hughes reviewed the results of the discography with the claimant on February 21, 2000. Dr. Hughes noted that based on her MRI and discography, the claimant had degenerative disc disease and pain at 3 levels, but it only reproduced her typical back pain at the L4-5 level. He noted no change in her symptoms and in his examination. The doctor noted that she was not a candidate for surgery and referred her to Dr. Shaird for epidural injections and to physical therapy. Dr. Hughes' chart note dated March 8, 2000 stated that the claimant had been off of work for 4 months and that "if she feels she is ready to go back to work, fine" (Exhibit 6F).

(A.R. 15). The test results from the February 16, 2000 lumbar diskography do not undermine the ALJ's credibility determination.[3]

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence because the ALJ "engaged in pure speculation when he found that plaintiff's caring for her 2-year old granddaughter was both physically and emotionally demanding." (Plf. Brief at 16). The common experience of physical and emotional demands in providing care for a two-year-old child cannot be dismissed as speculation. The ALJ was not required to accept plaintiff's testimony downplaying the demands of caring for this two-year old. It was entirely appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Cox v. Commissioner*, 295 F. App'x 27, 33-34

---

[3]Plaintiff's attorney represents to the court that sometime after the Appeals Council denied review and before plaintiff filed her brief on March 20, 2008, plaintiff had some form of back surgery. (Plf. Brief at 16 n.1). Counsel argues, "These records were not available for either hearing and are significant to the record only if to refute the ALJ's finding that Ms. Davis was not treating for her back." (*Id.*). This argument is frivolous. The surgical records are not "significant" because they are not part of the administrative record before the court. The surgical records were not filed in support of any request for remand under sentence six of section 405(g), and it is extraordinarily unlikely that records dated years after plaintiff's disability status expired could satisfy the requirement of materiality to the ALJ's determination that plaintiff was not disabled on or before June 30, 2005.

(6th Cir. 2008). The ALJ's credibility determination (A.R. 26-27) is supported by more than substantial evidence.

**2.**

Plaintiff states that, "There is no factual basis to support the Administrative Law Judge's conclusion that Ms. Davis had a non-severe impairment emotionally." (Statement of Errors at ¶ 3). The arguments in plaintiff's brief appearing under this heading are disjointed. At step 2 of the sequential analysis that ALJ found that plaintiff had severe impairments of degenerative disc disease and asthma. To the extent that plaintiff is arguing that the ALJ's decision should be overturned because the ALJ failed to find an additional severe impairment at step 2, her argument is patently meritless. The failure to find additional severe impairments is "legally irrelevant." *McGlothin v. Commissioner*, 2008 WL 4772077, at * 6; *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Plaintiff is dissatisfied with the ALJ's findings regarding her mental impairments, but this section of plaintiff's brief is devoid of any discussion of the ALJ's RFC determination, which expressly included restrictions based on plaintiff's mental impairments. The ALJ found that plaintiff's RFC limited her to simple, unskilled work with a specific vocational preparation of (SVP) rating of one or two, and restricted her from jobs that "involve concentration on detailed/precise tasks or multiple/simultaneous tasks." (A.R. 20). The ALJ's findings in this regard are supported by more than substantial evidence.

The concluding paragraph of this section of plaintiff's brief states as follows:

> [T]he Judge did not even mention Ms. Davis' testimony that her emotional functioning got to the point where she would close herself in a room for days at a time. She testified that over the last few years, she had shut herself in her room for a total of six or seven months. Clearly, it was error for Judge Matulewich to not consider the severity of Ms. Davis' symptoms along with the testimony of Dr. Ptacin and the assessment of Dr. Strang and her global assessment of [functioning score] of 51. He must state a valid reason why he rejected her testimony in light of the evidence of the examining doctors and the records of Dr. Ptacin that Ms. Davis' depression was significant and severe, *Hurst v. Secretary HHS*, 753 F2d 517, 519 (6th Cir[.] 1985); *Hall v. Bowen*, 837 F2d 272 (6th Cir[.] 1988)[.]

(Plf. Brief at 18-19). If the ALJ's opinion had omitted a discussion of the GAF score supplied by Psychologist Timothy Strang, that would not constitute grounds for disturbing the Commissioner's decision. *See DeBoard v. Commissioner*, 211 F. App'x. 411, 415 (6th Cir. 2006). Here, however, the ALJ discussed at the results Psychologist Strang's August 31, 2001 mental consultative examination (A.R. 189-93) at length, including the global assessment of functioning (GAF) score: "Dr. Strang did not diagnose the claimant with any disorder on Axis I or Axis II. Dr. Strang did give her a Global Assessment of Functioning (GAF) score of 51. *The Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 1994) describes a GAF between 51-60 as indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning." (A.R. 19). "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Commissioner*, 167 F. App'x 496, 503 n. 7 (6th Cir. 2006); *see Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007). "[A]ccording to the DSM's explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning." 167 F. App'x at 511. "[T]he Commissioner has declined to endorse the [GAF] score for use in the Social Security and [SSI] disability programs, and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings." *DeBoard v. Commissioner*, 211 F. App'x. at 415 (internal quotations and citations omitted). Where, as here,

other substantial evidence, such as the extent of the plaintiff's daily activities, supports the conclusion that the plaintiff is not disabled, the court may not disturb the denial of benefits on the basis of a relatively low GAF score. *Kornecky*, 167 F. App'x at 511.

The ALJ carefully addressed the opinions offered by non-treating physician Phillip Ptacin in the sworn statement (A.R. 287-94) given to plaintiff's attorney on September 19, 2006. (A.R. 18, 21). Plaintiff did not start treatment at Dr. Ptacin's clinic until after her disability insured status had expired, and Dr. Ptacin merely reviewed plaintiff's file. (A.R. 288). Dr. Ptacin's opinions were not entitled to any particular weight. He "merely reviewed the claimant's medical file prior to the deposition and had no direct treatment relationship with the claimant." (A.R. 21). The ALJ further observed that, "Dr. Ptacin is one of the two associate directors at the Clinic and he testified that his duties were primarily administrative in nature (Exhibit 21F)." (A.R. 21).

Plaintiff's remaining argument based on plaintiff's testimony that she shut herself away "for days on end" (A.R. 331-32) is a repackaging of her challenge to the ALJ's credibility determination. The ALJ's finding that plaintiff's subjective claims of disabling symptoms and limitations from depression were not credible is supported by more than substantial evidence. (A.R. 18, 21).

**3.**

Plaintiff argues that the ALJ's finding of non-disability should be reversed for the period after she reached age fifty on June 3, 2003, through her date last disability insured, June 30, 2005. (Plf. Brief at 19). The ALJ's opinion did not expressly state that on and after June 3, 2003, plaintiff was classified as a person closely approaching advanced age, *see* 20 C.F.R. § 404.1563(d),

or that Rule 202.10 of the Medical-Vocational Guidelines was the appropriate rule for this time period. However, these errors were harmless. Plaintiff was classified as an individual closely approaching advanced age during the entire period from June 3, 2003 through October 18, 2006. *See* 20 C.F.R. § 404.1563(d). The ALJ decision finding that plaintiff was not disabled at step 5 of the sequential analysis was based on the vocational expert's testimony in response to a hypothetical question that incorporated plaintiff's age as of the date of the October 18, 2006 hearing, age fifty-three (A.R. 306, 341), rather than using an earlier dates such as plaintiff's alleged onset of disability on October 6, 1999, her fiftieth birthday on June 3, 2003, or at the expiration of her disability insured status on June 30, 2005. If anything, use of plaintiff's age as of the October 18, 2006 hearing worked to plaintiff's advantage. Further, if the ALJ had used Rule 202.10 of the Medical-Vocational Guidelines as a framework for the period from June 3, 2003 through plaintiff's date last disability insured, the result would not have been altered because Rule 202.10 indicates that a finding of non-disability is appropriate.

## **Conclusion**

For the reasons set forth herein, the Commissioner's decision will be affirmed.

Dated:  February 23, 2009        /s/  Joseph G. Scoville
                                 United States Magistrate Judge